EXHIBIT 1

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR COURT OF CAROLINA

FAUSTINO XAVIER BETANCOURT-COLON

    Plaintiff

v.

ACOBA REALTY DEVELOPMENT,
INC.; SUPERMERCADOS MAXIMO,
INC.
    Defendant

**CIVIL ACTION**

**STATATUTORY INUNCTION PURSUANT TO**

**42 U.S.C. § 12188(a)(2)**

**COMPLAINT**

1.    This is a civil rights action by plaintiff Faustino Xavier ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and surrounding parking lot known as:

> Lago Alto Plaza;  Supermax - Trujillo Alto
> Expreso Manuel Rivera Morales,
> Trujillo Alto, 00976, Puerto Rico
> (GPS Coordinates: (18.364513, -66.009606)
> Catastro: 115-029-115-01-000
> Parcela: 115-029-115-01
> Procedencia: 115-029-115-01
> Street Address: CARR 181 BO LAS CUEVAS, TRUJILLO ALTO.
> (hereafter "the Facility")(see also image on next page)

2.    Plaintiff seeks injunctive and declaratory relief, attorney fees and costs, against ACOBA REALTY DEVELOPMENT, INC., the owner of the Facility; and SUPERMERCADOS MAXIMO, INC., the operator/tenant of the supermarket doing business as Supermax – Trujillo Alto  (hereinafter collectively referred to as "Defendant" or "Defendants"), pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA").

3. This action is necessary because the barriers described herein remain in place and, although not required by law, defendant was given notice and opportunity to correct these violations.



## JURISDICTION

4. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

5. Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court for the District of Puerto Rico, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

7. Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8. Plaintiff is *substantially* limited (compared to most individuals of the general population) in his major life activity of walking, standing, bending, and others because of the following condition and/or physical impairments: congestive

heart failure (20% heart function), hydrocephalus, and leg deformity. Plaintiff owns and frequently use an electric wheelchair and scooter for mobility. Plaintiff is registered as an individual with disabilities with state agencies and he owns a valid handicapped parking permit issues by the Department of Transportation of Puerto Rico. An image of the handicapped parking permit is shown below. His street and postal address is: Residencial Los Lirios, Edif. 8, Apt. 4, San Juan, PR 00926. His telephone number is: (787) 348-7280.



**FACTS**

9.    The Facility is a public accommodation facility, open to the public and whose operation affects commerce. Plaintiff lives in San Juan, approximately 2.8 miles away from the Facility by motor vehicle. Prior to instituting this action, Plaintiff visited the Facility several times. Plaintiff also attempted to resolve the issues described herein without litigation. Plaintiff also filed an administrative complaint and Plaintiff was informed that there were architectural barriers, as alleged by Plaintiff.

10.   Plaintiff visited the Facility on February 7, 2020 and February 14, 2020, among others, and encountered barriers (both physical and intangible) that interfered with Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. An image of a purchase receipt showing the date of his visit is below.



11.     Plaintiff is aware of illegal barriers to his access and he knows that it would be futile or dangerous to engage these barriers.  The barriers described herein are barriers to plaintiff full and equal access. Plaintiff is personally aware at this time of the following barriers at the parking lot of the Facility:

a) This property fails to comply with section; 206.2.1 Site Arrival Points. At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.

b) Purportedly accessible parking spaces are provided. There is no space that is at least 96 inches wide minimum with an adjacent 96-inch wide minimum demarcated access aisle OR 132 inches wide minimum with an adjacent 60-inch wide minimum demarcated access aisle. See 1991 Standards §§ 4.1.2(5), 4.6.3; 2010 Standards §§ 208.2.4, 502.2, 502.3.

c) Purportedly accessible parking space and van space are not identified by a vertical sign, displaying the International Symbol of Accessibility, located so that it will not be obscured by a vehicle parked in the space.  See 1991 Standards §§ 4.1.2(5), 4.6.4, 4.30.7; 2010 Standards §§ 216.5, 502.6, 703.7.2.1.

d) No van spaces are identified by a sign containing the designation "van accessible." See 1991 Standards §§ 4.1.2(5), 4.6.4; 2010 Standards §§ 216.5, 502.6.s

e) There is no route from the parking lot to an entrance accessible to persons with disabilities. See 1991 Standards §§ 4.1.2(1), 4.3; 2010 Standards § 206.2.1, Chapter 4.

f) Purportedly accessible parking spaces are provided. However, of the total parking spaces, the accessible not spaces located on the closest accessible route to the accessible entrance. 2010 Standards 208.3.1. Here, achieving the shortest accessible route will require locating accessible space closest to an entrance ramp or accessible route.

g) There is no accessible route from the street and sidewalk to the entrance accessible to persons with disabilities.  See 1991

Standards §§ 4.1.2(1), 4.3; 2010 Standards § 206.2.1, Chapter 4. There is there no alternate route of travel leading to the entrance from the parking lot, street and sidewalk that is accessible to persons with disabilities. See 1991 Standards §§ 4.1.2(1), 4.3; 2010 Standards § 206.2.1, Chapter 4.

h) A purported accessible ramp is provided near the purportedly accessible parking stall. However, the ramp is not properly configured; the running slope is steeper than 1:20, i.e. for every inch of height change there are not at least 20 inches of route run. Similarly, the cross-slope steeper than 1:48. There is not an alternate accessible entrance that is not a service or loading entrance. See 1991 Standards §§ 4.1.2(1), 4.1.3(8), 4.3, 4.14; 2010 Standards §§ 206.2.1, 206.4, 403.3 Chapter 4.

i) There is not a level landing that is at least 60 inches long and at least as wide as the ramp at the top of the ramp and at the bottom of the ramp.   2010 Standards §§ 405.7.2, 405.7.3 Chapter 4.



IMAGE: There is no space that is at least 96 inches wide minimum with an adjacent 96-inch wide minimum demarcated access aisle OR 132 inches wide minimum with

an adjacent 60-inch wide minimum demarcated access aisle.  See 1991 Standards §§ 4.1.2(5), 4.6.3; 2010 Standards §§ 208.2.4, 502.2, 502.3.



*IMAGE: Curb ramp that projects into the access aisle. Section 4.6.3*

*Parking Spaces. ...Parking spaces and access aisles shall be level with*

*surface slopes not exceeding 1:50 (2%) in all directions.*



*IMAGE:Curb Ramp with no flared sides; the maximum slope of the flare must be 1:10. Image below ilustrates a sketch of a compliant curb ramp.*



12.    Plaintiff is aware of illegal barriers to his access and he knows that it would be futile or dangerous to engage these barriers. The barriers described herein are barriers to plaintiff full and equal access. Plaintiff is personally aware at this time of the following barriers inside the the Supermax -- Trujillo Alto supermarket, located within the Facility:

a. This property fails to comply with section; 904.4.1 service counter (customer service). All portions of the counter are higher than 36 inches above the floor.

b. This property fails to comply with section; 904.4.1 service counter (meat department counter). All portions of the counter are higher than 36 inches above the floor.

c. This property fails to comply with section 606.5. Restroom the area below the lavatory is not configured to protect against contact.

d. The lavatories and/or sinks in the restrooms have exposed pipes and surfaces and are not insulated or configured to protect against contact in violation of section 606.5 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to safely utilize the restroom facilities.

e. Restroom – (2010 ADA Standards for Accessible Design – 309.3, 308). The configuration of the toilet area is substantially inconsistent with 2010 ADAAG.



13. All portions of the counters (service counter, deli area, and meat department counters - see images of deli counter and meat department counter below) at supermarket are higher than 36 inches above the floor in violation of section 904.4.1 of the ADAAG. See images below. Possible solution: lowering a section of the counter or replacing the counter. No portions of the counters – service counter, meat department counter– is at least 36 inches long. Possible readily achievable solution: lengthening a section of the counter. No accessible portions of the counters –service counter, meat department counter– has the same depth as the non-accessible areas of the counter. The following images accurately represent the current height of the sales and/or sales counters:



Image: meat department counter



Image: Meat department counter



Image: deli department counter



Image: Deli department counter

14.     Plaintiff believes, but cannot ascertain at times time without a site inspection of the property, that the following barriers to his access exist at the Facility:

   a. Failure to provide knee clearance for a disabled person under a counter or sink element in violation of 2010 ADAAG secs 306, 306.1, 306.3.

   b. Failure to provide toe clearance for a disabled person under a counter or sink element in violation of 2010 ADAAG secs 306, 306.1, 306.2, 306.2.1.

   c. The height of coat hook located in accessible restroom stall is above 48" from the finished floor in violation of section 308.2.1 of the 2010 ADAAG regulations.

   d. The Facility lacks restrooms signage in compliance with sections 216.8 and 703 of the 2010 ADAAG regulations.

   e. The height of the urinal should not exceed the maximum required height set forth in section 605.2 of the 2010 ADAAG standards. This made it difficult for Plaintiff to safely utilize the restroom facilities.

   f. There is inadequate clear turning space in the stall in violation of section 603.2.1 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to safely utilize the restroom facilities.

   g. There should be no vertical rise exceeding ½ inch at the threshold to the door leading to the restrooms in violation of section 404.2.5 of the 2010 ADAAG regulations. This made it difficult for Plaintiff to safely utilize the restroom facilities.

   h. Failure to provide the minimum required circular turning clearance for a disabled person due to a wall or some other obstruction that does not comply with standards 2010 ADAAG §§ 304, 304.3, 304.3.1, 603, 603.2 and 603.2.1.

i.   Failure to provide grab bars at 33 inches minimum and 36 inches maximum above the finish floor measured to the top of the gripping surface pursuant to 2010 ADAAG §§ 604, 609, 609.4.

j.   Failure to provide mirror(s) located above lavatories or countertops at the proper height above the finished floor 2010 pursuant to ADAAG §§ 603, 603.3.

k.   The men's restroom contains does not  include the accessible features listed above at (a), (b) and (d)? *See* 1991 Standards §§ 4.1.3(11), 4.22; 2010 Standards §§ 213, 603. <u>See also</u> exposed pipes below the lavatory, toilet paper dispenser improperly located and not within reach; hand dryer too high; hand soap dispenser and mirror too high; urinal too high.

15.   Although there is not requirement under the ADA to provide pre-suit notice, and despite that the ADA issues are obvious to the casual observer, as well as to Plaintiff based on years of experience encountering barriers in Puerto Rico, Plaintiff had the courtesy of informing the defendants about the ADA issues to the Defendant (see images below) on February 7, 2020 before his last visit to the property on February 14, 2020. However, there was no response from the Defendants. The image on the next page is a true and correct copy of Plaintiff's communication to Liz Guzman, supervisor at Supermax, and Adilda Belén, representative of Acaba Realty, the owner of the shopping center.



7 de febrero del 2020.

Sra.Liz Guzmán
Superiora de Servicio
Al Cliente. SuperMax.

Buenas tardes.

Me dirijo ante usted en relación a varias
irregularidades vistas en su tienda de Trujillo Alto.
Mas la inacción y poco ó ningún interés. A mi
entender, perjudicando grandemente a su empresa.
La actitud no fue la mejor. Su nombre es: Sra. María
Uriondo (Gerente).

A la atención de la Sra. Uriondo le lleve desde el
estacionamiento de impedidos en falta de las leyes
estatales y federales, Baños,pasillos con
mercancía,entre otras.
Uriondo de forma desinteresada, me indicó que lo
de los estacionamientos no era de ella. A mi
entender y con mi humilde observación. La Sra.
Uriondo pudo haber tomado la información,aunque
luego no hiciera nada.

Espero nos ayuden a las personas con
discapacidad a NO tener barreras,dentro y fuera de
sus facilidades en Trujillo Alto.

Buenas tardes.

Me dirijo ante usted en relación a varias irregularidades vistas en su tienda de Trujillo Alto. Mas la inacción y poco ó ningún interés. A mi entender, perjudicando grandemente a su empresa. La actitud no fue la mejor. Su nombre es: Sra. María Uriondo (Gerente).

A la atención de la Sra. Uriondo le lleve desde el estacionamiento de impedidos en falta de las leyes estatales y federales, Baños,pasillos con mercancía,entre otras.
Uriondo de forma desinteresada, me indicó que lo de los estacionamientos no era de ella. A mi entender y con mi humilde observación. La Sra. Uriondo pudo haber tomado la información,aunque luego no hiciera nada.

Espero nos ayuden a las personas con discapacidad a NO tener barreras,dentro y fuera de sus facilidades en Trujillo Alto.

* Adjunto varias fotos.

Sra. Guzmán. Gracias por su atención.

Sin nada mas.

Faustino Betancourt
Líder Comunitario.
787-348-7280

7 de febrero del 2020.

Sra. Awilda Belén
Administrador
De Centro Comercial
Acoba Realty

Saludos.

En la mañana de hoy me presente a el local Super Max ubicado en sus facilidades. Al percatarme de varias irregularidades como barreras arquitectónicas en los estacionamientos de para personas con diversidad funcional. Al tratar de hacerle llegar la queja a la Sra.Maria Uriondo gerente de Super Max,no mostró el interés en ayudar a corregir estas irregularidades en violación a leyes estatales y federales.

Por lo cual y ante su gentileza,Sra. Belén.
Le hago llegar varias de estas irregularidades y lo establecido en la ley.

Gracias por su atención.

Faustino Betancourt
Líder Comunitario
787-348-7280

16. The barriers identified herein are only those that Plaintiff personally encountered or is aware of now. It is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access.

17. Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.

18. Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers intentionally.

19. At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove barriers and to comply with the 2010 Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

20. Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to

maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliance state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated (or temporary) interruptions in access due to maintenance or repairs.

## LACK OF POLICIES, PRACTICES AND PROCEDURES

21.    Based on Defendants historic non-compliance with the ADAAG, Plaintiff believes, and therefore alleges, that Defendants have no internal policies, procedures or documents related to Defendant's ADA compliance efforts; Defendant have no information available as to the policies, practices and procedures regarding the construction standards and/or guidelines followed at the time of the construction of the Subject Property. The lease agreements executed by and between Defendant and its landlord (if any) do not include provisions delineating responsibility regarding compliance with ADA requirements, regarding parking and/or paths of travel/access, as well as other accessible features, at Defendants' facilities; There are no internal and/or third-party surveys, evaluations and/or assessments ("Surveys") relating to Defendants' compliance with the ADA. Ms. Awilda Belén, agent for Co-Defendant ACOBA REALTY DEVELOPMENT, INC., admitted in communications with the Plaintiff that they have no formal procedures involving compliance with the ADA Standards and barriers architectural removal because persons do not complaint about the conditions of the Facility.

22.    Plaintiff will produce expert testimony to confirm that formal policies and procedures should be adopted at the Facility to avoid non-compliance issues related to the restriping and maintenance of the parking lot over time. Areas and components for persons with disabilities should be clearly marked and

identified as required by ADA to make sure where they are and to discourage others from using them improperly. The policies and procedure should include securing consultants with knowledge about ADA compliance in parking lots and procedures for monitoring the parking lot for faded marking or vandalism; and budgeting maintenance costs over time in order to secure implementation.

23.     Even if defendants show that the *current* configuration of the parking lot now meet accessibility standards, and thus contend that plaintiff's claim is moot because the parking lot now meets those standards, the Court should consider that defendants' accessibility barriers could easily recur, triggering the "voluntary cessation" mootness exception. In these cases, courts inquire further to ensure defendants could not simply remove, or on the other hand *inadequately maintain*, a structural modification after dismissal for mootness. One factor these courts look to is a defendant's past conduct, as it may predict possible recurrence. <u>Moeller v. Taco Bell Corp.</u>, 816 F. Supp. 2d 831, 860 (N.D. Cal. 2011) (holding restaurant's past failures to follow accessibility policies showed discrimination may recur despite recent structural modifications). Defendants are corporate entities. Because of these written policies and procedures are required the mechanism to secure compliance with the ADA. Because repaved and restriped parking spaces fade over time and thus require repeated resurfacing and maintenance, well established policies and procedures must be established. There are no internal policies, procedures or documents related to Defendant's ADA compliance efforts. There is no information about policies, practices and procedures regarding the construction standards and/or guidelines followed at the time of the construction of the subject facility.  Similarly, there are no internal and/or third-party surveys, evaluations and/or assessments ("Surveys") relating to Defendants' compliance with the ADA. Because of this, defendants cannot

satisfy their "formidable burden" to show plaintiff's claims are moot because they have not shown the alleged parking lot accessibility violations will not recur. It is easy to image a newly-striped parking spot could go without maintenance in this circumstances. Cf. <u>Johnson v. Tackett</u>, 272 F. Supp. 3d 1198, 1204 (E.D. Cal. 2017) (similar facts; same conclusion).

24. Under the ADA, landlords and tenants are jointly and severally liable for barriers which exist at a facility. 28 C.F.R. § 36.201(b). <u>Botosan v. Paul McNally Realty</u>, 216 F.3d 827 (9th Cir. 2000) ("Thus, contractual allocation of responsibility has no effect on the rights of third parties. [citation omitted] The power to waive or impose liability as against a third party resides only in Congress, and Congress has stated that both the landlord and the tenant are liable under the Act." Id. at 833); Department of Justice, Technical Assistance Manual on the American With Disabilities Act § III-1.2000 (1994). Yet, there might be a dispute between defendants related to the allocation of their internal liability, but that does not impacts the plaintiff.

### CAUSE OF ACTION
### AMERICANS WITH DISABILITIES ACT OF 1990
### DENIAL OF "FULL AND EQUAL" ENJOYMENT AND USE

25. Plaintiff incorporates the allegations contained in paragraphs 1 through 14.

26. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

27. Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

28.     The ADA establishes different standards depending on when the facility was constructed and whether the facility has been altered since January 26, 1992. 28 C.F.R. §§ 36.401, 36.402.  Existing facilities are required to remove barriers to access for persons with disabilities where removal is "readily achievable." 42 U.S.C. § 12182(b)(2) (A)(iv); 28 C.F.R. § 36.304.  Facilities designed and constructed for first occupancy after January 26, 1993, must be accessible to persons with disabilities unless the entity can demonstrate that it is "structurally impractical." 42 U.S.C. § 12183(a). Finally, alterations after January 26, 1992 must be made to ensure that, to the "maximum extent feasible," the altered portions of the facility are accessible.  28 C.F.R. § 36.402(a)(1).

29.     The original ADA design Standards were first published in 1991 and are set forth at 28 C.F.R. Part 36, Appendix A (the "1991 Standards").  The new ADA design Standards were first published in 2010 and are set forth at 28 C.F.R. Part 36, Subpart D (the "2010 Standards").  Both Standards are available at www.ada.gov.  New construction and alterations commenced between September 15, 2010, and March 15, 2012, must comply with either the 1991 Standards or the 2010 Standards. All new construction and alterations commenced on or after March 15, 2012 must comply with the 2010 Standards.

30.     Plaintiff alleges on information and belief, the Facility was designed and constructed for first occupancy after January 26, 1993.   See 28 C.F.R. § 36.401.

31.     Plaintiff alleges on information and belief, the Facility is located in a facility that was constructed after January 26, 1993.  See 28 C.F.R. § 36.401.

32.     On information and belief, the Facility undergone alterations after January 26, 1992. The term "alterations" includes, but is not limited to, remodeling, renovation, rehabilitation, historic restoration, changes or rearrangement in

structural parts or elements, and changes or rearrangement in the plan configuration of walls and full height partitions. Normal maintenance, re-roofing, painting or wallpapering, asbestos removal, or changes to mechanical or electrical systems are not alterations unless they affect the usability of the building or facility.   See 28 C.F.R. § 36.402(b).

33.    Alternatively, if the Facility was not designed and constructed for first occupancy after January 26, 1993, the Subject Property is an existing facility required to remove barriers to access for persons with disabilities where removal is "readily achievable." 42 U.S.C. § 12182(b)(2). The ADA provides that, when assessing whether barrier removal is "readily achievable," the factors to consider include the "resources" of the facility, 42 U.S.C. § 12181(9)(b), which includes "the overall financial resources of any parent corporation or entity," 28 C.F.R. § 36.104.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

34.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

35.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

36.    Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

37.    In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make

the required services available through alternative methods, which are readily achievable.

Failure to Design and Construct an Accessible Facility

38.   Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

39.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

40.   Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.

Failure to Make an Altered Facility Accessible

41.   Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

42.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

43.   Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

44.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such

modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

45.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

46.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

47.     On information and belief, Plaintiff alleges that the failure to remove barriers has been knowing, willful and intentional because:

   i.   The barriers described herein are clearly visible and tend to be obvious even to a casual observer;

   ii.  Defendants historically failed to acknowledge that ADA compliance it not a one-time effort, but an ongoing obligation. They refused to promptly remove barriers or create alternative accommodations;

   iii. The Defendants own and operate the Facility and have control over conditions thereat. They have, and have had, the means and ability to make the necessary remediation of access barriers if they had ever so intended.

iv. Today, businesses have an obligation to become accessible, and there is a consequence if they do not: they could be sued. Defendant failed to be proactive and to provide access on its own. Defendant took a "wait and see" attitude. Nearly 30 years since the ADA was enacted on July 26, 1990, Defendant was expected to comply with its legal obligations.

v. Defendants ignore the daily experience of thousands of people with disabilities who cannot shop, transact personal business, visit the doctor, or enjoy recreation like most people take for granted, because so many public accommodations across the country, like defendants, have ignored the reasonable requirements of the ADA. The ADA is the difference between participation and exclusion on a daily basis.

vi. Plaintiff was not required to provide a written notice of the accessibility issues. No other civil rights law permits businesses to discriminate without consequence unless and until the victims of discrimination notify the business that it has violated the law. The ADA does not place the heaviest burden for ending discrimination on the very people the law is there to protect.

vii. The ADA is already very carefully crafted to take the needs of business owners into account. Compliance is simply not burdensome. The careful compromise originally designed by a bipartisan Congress in 1990, provides that existing businesses are only required to provide access when doing so is readily achievable. Establishing and running a business necessitates compliance with many laws and rules—that is the cost of doing business. It is unthinkable that we would delay or eliminate

consequences for small businesses that failed to pay taxes or meet health and safety codes. Violating the rights of people with disabilities should be treated no differently

viii. There are extensive federal efforts to educate business owners about their ADA obligations, including the in-depth DOJ ADA website (**ada.gov**), the DOJ ADA hotline, extensive DOJ technical assistance materials, and the ten federally-funded regional ADA Centers that provide in-depth resources and training in every state (**adata.org**). Yet defendant have made no meaningful, proactive effort to comply with the ADA.

ix. Defendants failed to acknowledge that the ADA accessibility standards are extremely important. They are not minor details or picky rules, but rather, are essential to ensure true accessibility. A doorway that is too narrow can be the difference between accessing a business or not. A too-short bathroom grab bar can be the difference between using a restroom or being forced to go without a restroom. That said, it is important to point out that to impose liability under the ADA, the barrier does not need to completely preclude plaintiff from entering or using the facility; it need only *interfere* with the plaintiff's full and equal enjoyment of the facility. See Lobato v. Gomez, Civil No. 15-0686 (E.D. Cal. Oct. 31, 2016); Moeller v. Taco Bell Corp., 816 F.Supp.2d 831, 848 (N.D.Cal.2011) (citing Doran v. 7-Eleven Inc., 524 F.3d 1034, 1041 n. 4 (9th Cir.2008) (discussing that the ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access.")). "Because the ADAAG establishes the technical standards required for `full and equal

enjoyment,' if a barrier violating the ADAAG relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes `discrimination' under the ADA, thereby violating the ADA." <u>Chapman v. Pier 1 Imports (U.S.)</u> <u>Inc.,</u> 631 F.3d 939, 947 (9th Cir.2011). s

x. People with disabilities are known to experience a loss of dignity, independence, personhood and pride associated with segregation and lack of access to public accommodations. See Kevin I. Coco, <u>Beyond the Price Tag: An Economic Analysis of Title III of the</u> <u>Americans with Disabilities Act</u>, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall 2010). Access barriers and segregation in the retail context create social stigma and undermine feelings of self-worth and independence of persons with disabilities. See Stacey Menzel Baker, Jonna Holland and Carol Kaufman- Scarborough, <u>How Consumers with Disabilities Perceive "Welcome" in Retail</u> <u>Servicescapes: A Critical Incident Study</u>, 23 J. of Serv. Marketing 160, 167-168 (2007). They also cause people with disabilities to have a negative overall reaction to the whole retail environment, and to experience fear and discomfort in that environment. See Carol Kaufman-Scarborough, <u>Reasonable</u> <u>Access for Mobility-Disabled Persons is More Than Widening</u> <u>the Door</u>, 75 J. of Retailing 479, 483, 494 (1999). Studies confirm that the greater the perceptions of one's disabilities as a preventive factor in participation in the marketplace, the less satisfied one is with life. See Carol Kaufman-Scarborough and Stacey Menzel Baker, <u>Do People with Disabilities Believe the</u>

ADA Has Served Their Consumer Interests?, 39 J. of Consumer Aff. 1, 24 (Summer 2005).

xi. Plaintiff vehemently rejects the proposition that private enforcement of the ADA is not legitimate, regardless of the size of the business. Compliance with the ADA's physical accessibility standards requires business owners and other places of public accommodation to take proactive steps and, often, to incur costs. Unfortunately, here, the ADA's threat of injunctive relief was not sufficient to guarantee voluntary compliance. Defendant erroneously assumes that barrier removal is more expensive than it is, and underestimates the amount of new patronage that would result from making their businesses accessible.[1] An owner's assessment of the costs and benefits of accessibility may be skewed by prejudice against or stereotyping of people with disabilities, even if the prejudice or stereotyping is unconscious. See Samuel R. Bagenstos, Subordination, Stigma, and "Disability," 86 VA. L. REV. 397, 423–24, 438–42. (2000).

xii. The ADA was not enough to convince defendant to comply with the law and the goal of this lawsuit is to see that they finally do.

**SECOND CAUSE OF ACTION**
**ARTICLE 1802 OF THE PUERTO RICO CIVIL CODE**
**INTENTIONAL OR NEGLIGENT MISCONDUCT**

48.   Plaintiff incorporates all previous paragraphs.

49.   Plaintiff alleges tha the defendants:

---

[1] See also, Michael Ashley Stein, The Law and Economics of Disability Accommodations, 53 DUKE L.J. 79, 124–27 (2003).

   a. negligently and carelessly designed, constructed, altered, or configured the Facility without regard to individuals with disabilities like plaintiff;

   b. negligently and carelessly operated the Facility without regard to individuals with disabilities like plaintiff;

   c. negligently and carelessly failed to do a professional assessment to comply with accessibility laws, although they had ample time and opportunity to avoid this result;

   d. negligently and carelessly operated its business in violations of Regulation 7400, known as the REGLAMENTO PARA REQUERIR QUE LOS ESTACIMIENTOS COMERCIALES EN PUERTO RICO MEJOREN ACCESOS A LA COMUNIDAD CON IMPEDIMENTOS (Aug. 8, 2007), promulgated by the Puerto Rico Department of Consumer Affairs;

   e. negligently failed to seek assistance of local or state agencies to prevent a configuration of the Subject Property that would interfere with Plaintiff's rights under state and federal law;

50. As a direct and proximate result of one or more of these aforesaid intentional or negligent acts or omissions, the Defendants failed to provide an accessible public accommodation in compliance with state and federal law and thus, deprived, interfered, or limited Plaintiff liberty of movement at the Subject Property, causing the Plaintiff a loss of enjoyment of a normal personal life.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A. A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant's facilities, as described above, are not fully accessible to, and independently usable by, individuals who with limited mobility;

B. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its facilities are fully accessible to, and independently

usable by, individuals with limited mobility, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant's facilities come into compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; or by closing the Facility until it becomes compliant with all applicable regulatory requirements.

C. Compensatory damages under Article 1802 of the Puerto Rico Civil Code according to proof.

D. Payment of costs of suit;

E. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

F. The provision of whatever other relief the Court deems just, equitable and appropriate.

DATED:  JULY 11, 2020

F/Zuleika Castro De Jesus
 Lic. Zuleika Castro De Jesus
PR Bar No.: RUA-21258
FL Bar No.: 1022294
D'Jesus Law Offices
1969 S. Alafaya Trail #379
Orlando, FL 32828-8732
zcastro@djesuslaw.com
T.: (407) 267-7130
Fax: N/A

F/José Carlos Vélez Colón
 Lic. José C. Vélez Colon
RUA  18913
Velez Law Group
421 Ave Muñoz Rivera
San Juan, PR 00918
jvelez@velezlawgroup.com
T.: (787) 599-9003
Fax: N/A